UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEN MARABLE,

                Plaintiff,

v.

MARK NICHTMAN, et al.,

                Defendants.

No. C05-1270MJP

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF

      This case comes before the Court on Defendants' Motion for Summary Judgment Dismissal of Plaintiff's Claim for Injunctive Relief (Dkt. No. 18). Having reviewed the parties' briefs and all pertinent documents and exhibits, the Court GRANTS Defendants' Motion for Summary Judgment. Plaintiff's claim for injunctive relief is hereby DISMISSED.

## BACKGROUND

      Plaintiff Ken Marable worked for the Washington State Ferry System ("WSF") for the last thirty-two years. In that time, he attained the position of Chief Engineer and is the most senior person with that title in the ferry system. Around 2002, Marable claims that he became concerned about various forms of corruption that he was seeing on the job. Specifically, Marable alleges that he was vocal about the fact that the Special Projects program was a waste of tax-payer money designed to pad the pockets of a group of managers he dubs the "Inner Circle." He also alleges that members of the "Inner Circle" failed to write down key information in the ferry logs, which both compromised the safety of the vessels and allowed members of the "Inner Circle" to collect undeserved overtime when other ferry employees were forced to call them at home to find out the status of the ships.

ORDER - 1

Mr. Marable states that he, along with other ferry staff, complained about these abuses and were targeted as whistle blowers. He claims that Mark Nichtman, former Director of Preservation and Maintenance of the WSF and Richard Phillips, a Staff Chief Engineer at the WSF, (both allegedly members of the "Inner Circle") in particular targeted him for his vocal disapproval of their allegedly corrupt ways. He complains that both Mr. Nichtman and Mr. Phillips knew that Mr. Marable was allergic to a cleaning substance known as Oil Eater 99. This substance allegedly caused Mr. Marable to have serious difficulty breathing. Although Mr. Marable alerted Mr. Nichtman and Mr. Phillips on several occasions about his difficulties with this substance, they continued to use it on board the ferries. In October 2002, Mr. Marable alleges that he communicated his problems with Oil Eater 99 ("Oil Eater") to Mr. Phillips, who replied, "'I have it and I'll use it, then you'll be gone.'" (Compl. at 6). Mr. Marable alleges that he tried to remove the containers of Oil Eater from the ferry himself, but that removal of this substance was seen as an act of insubordination.

Mr. Marable also alleges that in order to combat the failure to write down key status notes in the ship's log by management, he installed a tape recorder in the ferry upon which he worked, and used it to record phone instructions given to him. This act was also perceived by management to be one of insubordination, as well as a violation of Washington law. On November 13, 2002. Mr. Marable received a letter from Mr. Nichtman that charged him with acts of insubordination, criminal conduct, and discourtesy. These charges allegedly stemmed from Mr. Marable's actions with the Oil Eater and the recording device. However, Mr. Marable claims that these charges were brought against him in retaliation for his criticism of the Special Projects programs and the management's use of overtime.

On December 16, 2002, a disciplinary hearing was held regarding the charges pending against Mr. Marable. Mr. Nichtman acted as the presiding fact-finder at this hearing, which Mr. Marable claims was a conflict of interest because Mr. Nichtman was significantly biased against him. At the end of the hearing, Mr. Nichtman found Mr. Marable guilty of the behavior with which he was charged and gave Marable a suspension from his duties without pay that lasted for two weeks. Mr.

ORDER - 2

Marable claims that his suspension was further retaliation for his whistle blowing activities. In connection with this claim, Mr. Marable brings a claim against Douglas MacDonald, the director of the Washington State Department of Transportation, Mark Nichtman, and Richard Phillips in their official capacities and is demanding injunctive relief to protect his Constitutional rights and to prevent Defendants' from firing him. It is this claim that is the subject of the current motion.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

### II. Summary Judgment on Plaintiff's Claim for Injunctive Relief

Plaintiff Marable requests injunctive relief against all Defendants in their official capacities,"to protect the rights of Plaintiff under the U.S. Constitution." (Compl. at 12). Defendants point out that the claim for injunctive relief is the only cause of action brought against Defendant MacDonald.

ORDER - 3

Defendants argue that they are entitled to summary judgment on Defendant Marable's prayer for injunctive relief because he cannot demonstrate a likely threat of future injury and because his request for injunctive relief, without more, is too vague to be sustained. Plaintiff Marable, on the other hand, states that because he is bringing First Amendment claims, irreparable harm is presumed and that the level of scienter he is alleging on the part of Defendants makes his claims eligible for injunctive relief. If the Court is not willing to grant a permanent injunction at this stage, he requests a preliminary injunction.

Here, the Court finds that the Defendants have the better argument. To obtain a preliminary injunction, Mr. Marable must show: 1) that he will suffer irreparable injury if relief is denied; 2) that he will probably prevail on the merits at trial; 3) the balance of potential harm favors him; and 4) the public interest favors granting injunctive relief. International Jensen, Inc. v. Metrosounds U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993). The Ninth Circuit has also adopted an "alternative test" for making the determination of whether or not to grant injunctive relief. Specifically, "the moving party may meet its burden by demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." Id.

Although Mr. Marable is alleging that his First Amendment rights were denied and that he suffered irreparable harm for this reason, he has not alleged that this harm is ongoing, nor has he shown that it is likely to be repeated. The Supreme Court has commented that "past wrongs do not in themselves amount to [a] real and immediate threat of injury." City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983). Although evidence of past wrongs may certainly be taken into account by a Court as evidence of the likelihood of future wrongs, the burden to show that future injury is likely rests with the Plaintiff. Nelsen v. King Co., 895 F. 2d 1248, 1251 (9th Cir. 1990); see also O'Shea v. Littleton, 414 U.S. 488, 496 (1974). In the case at hand, Plaintiff has not made such a showing. First of all, Defendant Nichtman, who appears to be the main alleged aggressor in Plaintiff's narrative, has been removed from his position as the Director of Preservation and Maintenance of WSF. Second,

ORDER - 4

Plaintiff admits that Oil Eater 99 was removed from the boat on which he worked following an alleged call made by OSHA directing WSF to remove this substance from the ferry. (Compl. at ¶3.17). Finally, most of the events alleged took place in 2002–four years in the past. Although there are a few allegations of isolated comments from supervisors up until 2004, there is no allegation that the alleged harassment continues to the present or is likely to occur in the future.

Whether or not the Plaintiff is likely to suffer future irreparable harm is the touchstone issue under both the traditional four-pronged preliminary injunction inquiry and the newer, alternative approach also sanctioned by the Ninth Circuit. Because Plaintiff has not made this showing, the Court hereby GRANTS summary judgment on his claim for injunctive relief.

## CONCLUSION

Plaintiff has not raised an issue of material fact that he is in danger of any future, irreparable harm stemming from his allegations. The Court accordingly GRANTS Defendants' motion for summary judgment on Plaintiff's claim for injunctive relief.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 22nd day of August, 2006.

Marsha J. Pechman
United States District Judge

ORDER - 5