1
2
3
4               UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
5                        AT SEATTLE

6

7   KEN MARABLE,
                                              No. C05-1270MJP
8                        Plaintiff,
                                              ORDER DENYING PLAINTIFF'S
9   v.                                        MOTION FOR SUMMARY
                                              JUDGMENT AND GRANTING IN
10  MARK NITCHMAN, et al.,                    PART AND DENYING IN PART
                                              DEFENDANTS' MOTION FOR
11                       Defendants.          SUMMARY JUDGMENT ON
                                              PLAINTIFF'S CLAIMS AGAINST
12                                            NITCHMAN AND PHILLIPS

13

14          This case comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt.

15   No. 19) and Defendants' Motion for Summary Judgment on Plaintiff's Claims Against Nitchman and

16   Phillips (Dkt. No. 39).  Having reviewed the parties' briefing, as well as all pertinent documents and

17   exhibits, the Court DENIES Plaintiff's Motion.  The Court GRANTS Defendants' Motion for

18   Summary Judgment as to Plaintiff's structural due process claim based on institutional bias, negligent

19   infliction of emotional distress, and breach of contract claims.  The Court DENIES summary

20   judgment as to Plaintiff's structural due process claim on personal bias and his whistle blower

21   retaliation claim.

22                                    BACKGROUND

23          The majority of the facts in this case were presented in this Court's earlier Order on

24   Defendants' Motion for Summary Judgment on Plaintiff's Claim for Injunctive Relief (Dkt. No. 64).

25   For this reason, the Court presents an abbreviated version of the facts of this case in this Order and

26   incorporates the background section of the previous order here.

ORDER - 1

Plaintiff Ken Marable is a Chief Engineer in the Washington State Ferry ("WSF") System.  He has worked for the ferry system for the past thirty-two years.  Starting in 2002, Mr. Marable alleges that he was bothered by internal corruption that he claims he witnessed in the ferry system.  He claims, specifically, that Mark Nitchman, the former Director of Preservation and Maintenance for the WSF and Richard Phillips, Mr. Marable's supervising Staff Chief Engineer aboard the Ferry Puyallup, were padding their pay with undeserved overtime compensation.  Mr. Marable also alleges that Mr. Nitchman and Mr. Phillips used funds designated for "Special Projects" to supplement their pay.  He claims that instead of using these funds to do projects that would be beneficial to the ferry system and taxpayers, Mr. Nitchman and Mr. Phillips used these monies to enrich themselves.  Mr. Marable claims that he made his views known to Mike Thorne, acting CEO of the WSF ferries at the time, and that he talked to DOT auditor Jeri Silvertson regarding these alleged abuses.  Mr. Marable alleges that Mr. Nitchman and Mr. Phillips perceived these activities as whistleblowing on Mr. Marable's part, and worked together to retaliate against him through the persistent use of Oil Eater 99 ("Oil Eater"), a substance to which they knew him to be allergic, and formal disciplinary action.

Mr. Marable brings §1983 claims for denial of his First Amendment rights, negligent infliction of emotional distress claims, due process violation claims, breach of contract claims, and whistle blower retaliation claims against Nitchman and Phillips. Plaintiff claims that not only does he raise substantial issues of fact on all of his allegations, but that the evidence is so overwhelming in support of his case that summary judgment should be granted in his favor as to liability on his §1983 claims and his negligent infliction of emotional distress claims.  Mr. Nitchman and Mr. Phillips take the opposite position and claim that summary judgment should be granted in their favor on all but the First Amendment claim and the claim for injunctive relief, which has already been dismissed in this Court's previous order.  Defendants also move to strike a number of Plaintiff's exhibits.

ANALYSIS

**I.  Summary Judgment Standard**

1    Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City

2    of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying

3    facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus.

4    Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the

5    evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v.

6    Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the

7    burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H.

8    Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden,

9    the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an

10   element essential to that party's case, and on which that party will bear the burden of proof at trial.

11   Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving

12   party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine

13   issue for trial. Id. at 324.

14   **II. Evidentiary Issues**

15       Defendants move to strike several of Plaintiff's supporting documents in their Response to

16   Plaintiff's Motion for Summary Judgment on the basis that they are not supported by factual data or

17   personal knowledge and instead are informed by conclusory allegations and hearsay. They also move

18   to strike these documents in their Reply to their own Motion for Summary Judgment on the claims

19   against Nitchman and Phillips. The Court examines each of the documents objected to below and

20   provides a ruling for the purposes of the parties' summary judgment motions. The Court refers to the

21   Federal Rules of Evidence ("FRE").

22       *A. Hoitink Declaration*

23       This is the declaration of Mr. Marable's personal physician. All of the statements in Dr.

24   Hoitink's declaration appear to stem from either his knowledge as a physician or observations that he

25   made while examining Mr. Marable. Any alleged hearsay contained in this statement comes from

26   medical records, which Dr. Hoitink has attached to his affidavit, which meet the business records

exception to the hearsay rule under FRE 803(6).  Furthermore, Defendants have not provided any

precise citations for the material to be struck from Dr. Hoitink's affidavit. Courts need not sift

through evidence for alleged inadmissible statements without the aid of pinpoint cites.  See Orr v.

Bank of America, 285 F. 3d 764, 775 (9th Cir. 2002).  In the future, if Defendants would like

statements struck, they must provide the line and page number of the offending statements.

### B.  Newmon Declaration

Bob Newmon states that he worked for WSF during the relevant period as an oiler aboard the

ferry Walla Walla.  The majority of his affidavit appears to be based on his personal experiences and

observations.  Defendants have not provided any pinpoint citations for which statements they wish to

be struck.  As noted above, it is not the Court's duty to comb through affidavits for hearsay. Orr, 285

F. 3d at 775. The Court will not strike this declaration at this time but notes that if this case does go

to trial, the parties will be held to strict evidentiary standards at that time.

### C.  Musselman Declaration

In their Response to Plaintiff's Motion for Summary Judgment (Dkt. No. 19), Defendants

move to exclude paragraph 2, lines 4-7; paragraphs 3-11; paragraph 13, lines 9-21 and paragraphs 14

and 15 of Mr. Musselman's Declaration, filed April 21, 2006, with this Court. In their Reply to their

Motion for Summary Judgment on the Claims brought against Nitchman and Phillips, Defendants ask

the Court to strike two sections of Mr. Musselman's July 18, 2006, affidavit: paragraph 2, line 3

through paragraph 11 and paragraph 13, line 9 through paragraph 15.  Both declarations are

substantially the same, with the exception of some line number and typesetting variations.  Paragraph

2, lines 4-7 describe public records that Mr. Musselman obtained through a prior litigation.

Paragraphs 3 through 11 detail a list of documents that Mr. Musselman appears to have obtained in

connection with prior litigation and through a public records request that he made.  These documents

must be struck.  Although Mr. Musselman can testify as to how he received these documents, he

cannot testify as to whether or not the documents that he received through his public records request

are authentic.  Regarding the documents he attempts to put into evidence that concern prior litigation,

he does not state how he obtained copies of transcripts for litigation to which he was not a party. Only paragraph 12 and Exhibit J will not be struck because Mr. Musselman received these in earlier litigation in which he was involved and they are evidence of testimony in prior litigation pursuant to FRE 804(b)(1).  The Court cautions Mr. Marable, however, that this document will not be admissible at trial unless he can demonstrate that Mr. Thorne is unavailable.  Paragraph 13 of Mr. Musselman's April 21st statement mostly contains a recounting of Mr. Musselman's personal experiences and observations.  These statements are based on his personal knowledge and are admissible.  However, on two occasions, Mr. Musselman does make statements based on what he heard or for which he cannot have personal knowledge.  The Court strikes the following statements:

- "I heard that Broxon was receiving money to conduct this Special Project." (¶13, lns. 9-10).

- "Since members of the management were present at the union meetings, they had knowledge of my comments." (¶13, lns. 18-19).

Defendants also move to keep out the following statement:

- "At my *Loudermill* hearing, Nitchman stated he was contacted by the Bremerton Sun about Special Projects." (¶13, lns. 20-21).

The Court views this statement as an admission of a party-opponent under FRE 801(d)(2) and will allow it to come in for the purposes of this motion.

Finally, paragraphs 14 -15 of the April 21st statement of Mr. Musselman seek to admit affidavits executed by Cal Kuykendall and Bruce Stell in previous litigation.  For the purposes of the current summary judgment motion, these affidavits are allowable under FRE 804(b)(1), but if Plaintiff wants to introduce these statements at trial, he will have to show that the witnesses are unavailable.

*D. McLaughlin Declaration*

In their Response to Plaintiff Marable's Motion for Summary Judgment, Defendants move to strike the following portions of Floyd McLauglin's Declaration, filed with this Court on April 21, 2006: paragraph 4, lines 1, and 5-9; paragraph 5; paragraph 6, lines 1 and 2; paragraph 7, lines 2-4;

paragraph 8; and paragraph 9, lines 13-15.  In their Reply to the Motion for Summary Judgment on the Claims brought against Nitchman and Phillips, Defendants ask the Court to strike the following portions of McLaughlin's July 17, 2006, affidavit: paragraphs 4 and 5; paragraph 6, lines 16-17; paragraphs 7 and 8; and paragraph 9, lines 11-14.  Apart from some line numbering and typesetting variations, and the first four words of paragraph 9, these two statements are substantially the same. Floyd McLaughlin was an oiler on the Puyallup ferry during the relevant time period for this litigation.  He filed a union grievance against Doug Phillips to protest, in part, the alleged treatment of Mr. Marable.

- Paragraph 4 recounts Mr. McLaughlin's personal experiences and observations during the union proceeding that he initiated.  The attached transcript of that proceeding and exhibits should be admitted for the purposes of summary judgment as records from a previous litigation under FRE 804(b)(1).  However, for trial purposes, Plaintiff will have to show witness unavailability to get these documents admitted.

- Paragraph five of Mr. McLaughlin's statement is composed almost entirely of hearsay statements that appear to be offered for the truth of the matter asserted.  As such, the first three sentences of this paragraph shall be struck.  The last two sentences, however, are admissible because they appear to be based on Mr. McLaughlin's own experiences.

- The first two lines of paragraph 6 state: "I was also harassed in 2002 and I believe the harassment was caused by my refusal to assist in the harassment of Chief Ken Marable and Jim Brazeau."  This is a statement that reflects Mr. McLauglin's own experience and lay opinion and is admissible under FRE 701.

- Paragraph 7 addresses a photograph that Mr. McLaughlin took and which Plaintiff is seeking to admit into evidence.  Mr. McLaughlin is an appropriate person to authenticate the photograph and describe it.  The court will not strike this paragraph.

- Paragraph 8 contains a hearsay statement submitted for the truth of the matter asserted that the Court strikes: "[a]fter my first day of testimony but before my second day of testimony a

person with a screen name of Mark Nitchman went onto the internet page and made remarks suggestion I was not a good union member because I testified at trial." All other statements in this paragraph appear to be based on Mr. McLaughlin's own personal experiences and are admissible.

• Defendants ask for the first four lines of paragraph 9 to be struck. The following sentence is struck for the time being as hearsay: "A couple months ago Washington State Ferry Chief Hank Tjemsland came aboard the ferry I was working on and stated that the people testifying against the state were going to be brought up on charges by the Washington State Attorney General's Office." The Court may re-visit this decision if the Plaintiff can show that Mr. Tjemsland can be considered a speaking agent for the WSF.

*E. Marable Declaration*

Mr. Marable submitted two statements to this Court. The first was filed on April 21, 2006. The second was filed on July 17, 2006. Mr. Marable's two declarations are substantially different and are dealt with separately below.

<u>1) Declaration of Ken Marable filed with the Court on April 21, 2006</u>

In Defendants' Response to Plaintiff's Motion for Summary Judgment, they ask the Court to strike the following portions of Mr. Marable's affidavit that was filed on April 21, 2006, with this Court: paragraphs 3-4; paragraph 5, lns. 1-4 on page 3; paragraph 6, lines 10-23; paragraph 7, lines 24-1, on page 4; and paragraphs 8-12.

• Paragraphs 3 and 4 contain statements regarding Mr. Marable's experiences working at WSF and also his opinion and perception of events he observed. The Court admits these statements to the extent that they are useful as lay opinion testimony under FRE 701 and clarify Mr. Marable's claims. However, the Court is cautious about regarding these statements as factual evidence without further corroboration.

- Paragraph 5, lns. 1-4 describes statements that Mr. Marable allegedly made to a state auditor.  Because he is the person who made these statements, they are allowable and will be subject to full cross-examination if this case goes to trial.

- Paragraph 6, lns. 21-23 contains lay opinion testimony from Mr. Marable regarding his experience with Oil Eater 99.  His statement that Defendant Nitchman ordered it to be put back on the ferry is admissible because it is based on a public record, which is attached to the affidavit.

- Paragraph 7, lns. 24-1, is admissible.  What Mr. Phillips allegedly said to Mr. Marable is an admission of a party-opponent under FRE 801(d)(2) and will be admitted for the purposes of this motion.

- Paragraphs 8, 9, and 12 will not be struck.  They contain statements pertaining to Mr. Marable's experiences derived from his own personal knowledge. Any opinions he gives are admissible lay opinion testimony under FRE 701 that will allow the Court to further understand his claims.

- Paragraph 10 seeks to admit Defendants' expert medical report.  Mr. Marable makes no statements authenticating this report, so this paragraph and the report should are struck.

- Paragraph 11 contains the statement:  "At one point Staff Chief Doug Phillips admitted to me that Nitchman told him not to make a lot of log entries on the Washington State Ferry Puyallup so that they could protect themselves and take a different position if something happened and they needed to change their story." (Marable Decl., ¶11, lns. 22-25).  The Court views this as the admission of a party-opponent for the purposes of this motion and will admit it.

2) Affidavit of Ken Marable filed with the Court on July 17, 2006

In Defendants' Reply to their Motion for Summary Judgment on the Claims against Nitchman and Phillips, they ask the Court to strike the following portions of the Affidavit of Mr. Marable, filed

with this Court on July 17, 2006: paragraph 4; paragraph 5, lns. 14-18; paragraph 7, lns. 1-2; paragraphs 9, 13, and 15; paragraph 16, lns. 25-4; paragraphs 19, 20, and 21; paragraph 22, lns. 21-23; paragraph 23, lns. 2-7; and paragraphs 25-26.

- Paragraph 4 seeks to authenticate Exhibit B, which is a "Stores Issue" document aboard the Ferry Puyallup.  This document is admissible as either a business or public record under FRE 803(6) or (8).  Mr. Marable was in a position through his job to know what this document was and may authenticate it.

- Paragraph 5, lns. 14-18 refer to statements Mr. Marable claims he made to Defendant Nitchman in a telephone conversation.  Because Mr. Marable is testifying as to his own statements, these statements are admissible for the purposes of this motion and will be subject to cross-examination at trial.

- Paragraph 7, lns. 1-2 refer to Mr. Marable's own observations as a worker for WSF. These observations are admissible.

- Paragraph 9 also seeks to authenticate a "Stores Issue."  Paragraphs 13 and 15 seek to authenticate an Engine Room Log entries from the ferry Puyallup.   The analysis on these documents is the same as that discussed above regarding Paragraph 4.  These documents will not be struck.

- Paragraph 16, lns. 24-25, refer to observations Mr. Marable made while working aboard the Ferry Puyallup.  These statements are admissible as lay opinions under FRE 701 and will be subject to cross examination at trial.  The Court will not strike these statements.

- Paragraphs 19 and 20: in both of these paragraphs, Mr. Marable refers to what might be admissible business/public records and draws conclusions based on data contained in those documents.  Paragraph 19 deals with Doug Phillips' time sheet, while paragraph 20 deals with the union contract and retirement pensions using the

Washington State Insurance Commissioner's tables. However, Mr. Marable does not submit any of these documents, nor does he state how he has the expertise needed to draw these conclusions. These paragraphs are struck.

- Paragraph 21 seeks to admit a clipping for the Seattle Post-Intelligencer. The Court strikes this paragraph because the newspaper clipping is not relevant to the current case.

- Paragraph 22, lns. 21-23: this paragraph refers to a MSDS sheet on Oil Eater 99. The Plaintiff does not identify the origin of this document, which is hearsay, and must be struck.

- Paragraph 23, lns. 2-7: The statements contained in this section of Marable's affidavits are largely his observations or public knowledge and admissible. There is one hearsay statement in this passage that will be struck: "After Thorne left, my union representative Marty Micomonaco warned me that Mark Nitchman began talking about firing me." (¶23, lns. 4-5).

- Paragraphs 25-26: These paragraphs refer to Mr. Marable's allegations that he asked Mr. Phillips for documents that were not produced. These statements are based on Mr. Marable's experience and are admissible. Exhibit R is a document created by Mr. Marable and he has the ability to authenticate it.

**III. Plaintiff's Cross-Motion for Summary Judgment**

In Plaintiff Marable's cross motion for summary judgment, he asks for summary judgment on his §1983 claims based on alleged First and Fourteenth Amendment violations; his negligent infliction of emotional distress claim; and his claim for injunctive relief. The last of these has already been addressed by this Court (See Dkt. No. 64). Because the Court has granted Defendants' motion for summary judgment as to the issue of injunctive relief, the Court need not address that claim here.

**A. Section 1983 Claims based on First Amendment and Fourteenth Amendment Violations**

Plaintiff is claiming that Defendants Nitchman and Phillips violated his First Amendment rights, as they are made applicable to the states by the Fourteenth amendment, by retaliating against him for speaking out against the corruption and alleged faulty practices that he claims that he witnessed by managers at WSF. Mr. Marable makes a showing that he reported this behavior to Mike Thorne, the former CEO of WSF. (Marable's July 17 Aff., Ex. I). Mr. Marable also alleges that he spoke with DOT auditor Jeri Silvertson regarding these issues. Additionally, he testified that he filed an ethics charge regarding the allegations at issue in this litigation with the Washington State Executive Ethics Board. (See Marable's April 21 Aff. at ¶5; Marable Dep. at 95, lns. 3-5). Mr. Marable claims that the retaliation against him took the form of placing Oil Eater in areas where he was working after he had informed Defendants that he was allergic to it and that it caused him to have difficulty breathing. He also claims that the discipline he received after the disciplinary hearing held by Mr. Nitchman in December 2002 constituted retaliation. Defendants claim that Mr. Marable was disciplined for insubordination, violations of Washington law, and discourteous behavior. Defendant Phillips submits in his defense the findings of the Trial Committee of the MEBA union, which states that there was insufficient evidence submitted to prove that he was knowingly trying to harm Mr. Marable through the use of Oil Eater aboard his vessel. (Phillips Aff., Ex. 1). Additionally, Defendant Nitchman, who made the decision to discipline Mr. Marable, states that he did not know that Plaintiff was speaking out against him or the Special Projects program until 2004–almost two years after he made his decision to discipline Mr. Marable. (Nitchman Decl. at ¶¶ 7-8).

In Pickering v. Board of Education of Township High School Dist. 205, 391 U.S. 563, 574 (1968), the Supreme Court held that a public employee's exercise of his right to freely speak on issues of public concern, "may not furnish the basis of his dismissal from public employment." The Ninth Circuit has echoed this view, stating that it is the courts' responsibility "to ensure that citizens are not deprived of fundamental rights by virtue of working for the government." Hyland v. Wonder, 972 F. 2d 1129, 1137 (9th Cir. 1992). Here, because this is Plaintiff Marable's motion, the Court views the circumstances in the light most favorable to Defendants. Phillips' and Nitchman's affidavits

1   raise issues of material fact regarding whether or not they were retaliating against Mr. Marable for

2   speaking out against them for corrupt practices.  Whether or not Mr. Marable was retaliated against

3   is an issue to be decided by a jury.  Accordingly, the Court DENIES summary judgment on this claim.

4

5   **B.  Section 1983 Claims based on Fourteenth Amendment Due Process Violations**

6   Mr. Marable also moves for summary judgment on his claim that his due process was violated

7   by Mr. Nitchman because he presided over Mr. Marable's disciplinary hearing even though he had

8   several clear conflicts of interest that prevented him from rendering a fair verdict.  Mr. Marable

9   alleges that Mr. Nitchman had a "clear structural bias and personal interest and a structural bias and

10  institutional interest in the outcome of the fabricated disciplinary changes." (Pl's Mot. at 11, emphasis

11  in original).  The Ninth Circuit has acknowledged that structural bias resulting in a due process

12  violation comes in two forms.  First, it may manifest itself when the decision maker has a "'direct,

13  personal, substantial pecuniary interest in the proceedings.'" Alpha Epsilon Phi Tau Chapter Housing

14  Ass'n. v. City of Berkeley, 114 F. 3d 840, 844 (9th Cir. 1997).  Second, due process may be violated

15  where the person responsible for rendering a decision has a strong motive "to rule in a way that

16  would aid the institution." Id.  Mr. Nitchman denies these allegations and states that he acted as an

17  unbiased decision maker during Mr. Marable's disciplinary hearing. (Nitchman Decl. at 2-3).  Making

18  all inferences in favor of the non-moving party at this juncture, these statements reflect a factual

19  conflict and demand a DENIAL of summary judgment in Plaintiff's favor on this issue at this time.

20  **C.  Negligent Infliction of Emotional Distress ("NIED") Claims**

21  Mr. Marable also moves the Court for summary judgment on his NIED claim.  In order to

22  support a claim for negligent infliction of emotional distress, a plaintiff must, "establish a duty, a

23  breach, proximate cause, and damage or injury." Haubry, 106 Wn. App. at 678.  In establishing the

24  injury, Plaintiff must submit admissible evidence that he suffered from a diagnosable emotional

25  disorder. Id. at 679.  Here, Mr. Marable has submitted some admissible evidence that he had an

26  allergic reaction that may have been caused by exposure to Oil Eater 99.  However, he has not

provided any evidence that demonstrates a causal link between this allergic reaction and any emotional distress he may have been suffering, nor does his doctor make any reference to the fact that his breathing difficulty was caused, in part, by emotional trauma. Mr. Marable also alleges that the stress he experienced caused a rash to break out on his hands. (July 17 Marable Aff. at ¶ 12, ln. 5-6). However, he does not provide any evidence demonstrating that this rash was diagnosed as a symptom of his emotional distress by a medical professional. Without such a showing of causation, the Court cannot grant summary judgment in Mr. Marable's favor and must DENY this motion.

**V. Defendants' Motion for Summary Judgment as to Nitchman and Phillips**

Defendants Nitchman and Phillips seek summary judgment in their favor of all of the claims Plaintiff Marable has brought against them, with the exception of the §1983 claims that are based on an alleged violation of Free Speech. The Defendants have brought a separate motion specifically on that claim, which will be dealt with in a separate order.

**A. Procedural Issues Raised by Plaintiff**

Mr. Marable claims that Defendants' motion for summary judgment should not be considered because of several procedural problems. First, Mr. Marable cites Local CR 7(d)(2)(A), [the correct citation in the 2005 version of the Local Rules is CR 7(e)(3)] which limits the page number for summary judgment motions to 24. Mr. Marable wrongly contends that all motions for summary judgment in a given case should be limited to a total of 24 pages, and objects to Defendants' filing of two separate motions, which together exceed the page limit. However, the rule does not support Mr. Marable's presumption in this regard. Each of the Defendants' individual motions are within the page limit.

Second, Mr. Marable claims that Fed. R. Civ. P. 56(g) allows a Court to strike affidavits made in bad faith. However, Rule 56(g) only discusses the possible imposition of reasonable expenses and does not permit the Court to strike affidavits. In any event, Mr. Phillips affidavit and the attached exhibits do not appear to contradict his early statement that he did not have documents related to

1   Plaintiff. The exhibits contain corporate training manuals, codes of conduct and other general

2   corporate information, none of which directly relate to Mr. Marable.

3          Third, Mr. Marable inaccurately characterizes Fed. R. Civ. P. 56(f) when he states that it

4   "provides a process for litigants to request additional information when an opposing party produces

5   bad faith affidavits." (P's Resp. at 11).  Mr. Marable misconstrues the case he cites, which actually

6   reads, "Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary

7   judgment when they have not had sufficient time to develop affirmative evidence." Burlington

8   Northern & Santa Fe Ry. Co. V. The Assiniboine, 323 F.3d 767, 773 (9th Cir. 2003). Mr. Marable's

9   case has been pending since July of last year.  The Court has granted in part some of Plaintiff's

10  discovery extension requests already. (See Dkt. No. 61).  A 56(f) salvo at this point, on the eve of

11  trial, is inappropriate in this case.

12         Finally, Mr. Marable claims that the Defendants' motion for summary judgment should be

13  dismissed because he has filed a cross motion for summary judgment and no issues of material fact

14  exist to contest his motion. The Court, however, has addressed Mr. Marable's motion for summary

15  judgment separately, *supra*, and need not re-visit those issues here.

16         Because Mr. Marable has misconstrued the relevant rules, the Court disregards his procedural

17  objections to Defendants' summary judgment motion and focuses on the merits.

18  **B. Cause of Action Two-- Section 1983 Claim based on 14th Amendment Violations of**

19  **Structural Due Process**

20         Defendants argue that Plaintiff has no admissible evidence to support his claim that there were

21  structural due process violations in the way his December 2002 disciplinary hearing was conducted.

22  Plaintiff states that there is no issue of material fact regarding his claim and that summary judgment

23  should be granted in his favor because Mr. Nitchman's personal and institutional biases are so well

24  documented.  Plaintiff's motion has been addressed, *supra*, by the Court and need not be addressed

25  here.  As noted earlier, the Ninth Circuit has acknowledged that structural bias resulting in a due

26  process violation comes in two forms.  First, it may manifest itself when the decision maker has a

'"direct, personal, substantial pecuniary interest in the proceedings.'" <u>Alpha Epsilon Phi Tau Chapter</u> <u>Housing Ass'n. v. City of Berkeley</u>, 114 F. 3d 840, 844 (9th Cir. 1997).  Second, due process may be violated where the person responsible for rendering a decision has a strong motive "to rule in a way that would aid the institution." <u>Id</u>. The admissible, non-hearsay evidence that supports Mr. Marable's allegation that Mr. Nitchman had an institutional bias against him is negligible.  However, the Court finds that Plaintiff has raised issues of fact as to whether or not Defendant Nitchman bore a personal bias against him that interfered with his role as an impartial fact-finder at Mr. Marable's disciplinary hearing.

Mr. Marable has stated that he complained to the Washington State Executive Ethics Board about Mr. Nichtman, talked to DOT auditor Jeri Silvertson about Mr. Nichtman, and submitted a letter to Mike Thorne, CEO of the WSF complaining, in part, about Mr. Nichtman in his role as Maintenance Director of WSF. (Marable Decl. of April 21, Ex. I).  This letter is dated November 4, 2002.  Mr. Marable's disciplinary hearing occurred on December 16, 2002–just a little over a month after Mr. Marable complained about Mr. Nichtman to the CEO of WSF.  Mr. Marable's complaints to the State Ethics Board and to the DOT auditor also allegedly took place that same year. Although Mr. Nichtman states in an affidavit that he was not aware of Mr. Marable's complaints about him and viewed inquiries by state auditors as routine, (see Nitchman Aff. filed June 28, 2006, ¶ 8-9), his statement only creates an inconsistency and an issue of fact for trial on this issue. For this reason, the Court GRANTS Defendants' motion as to Mr. Nitchman's alleged structural institutional bias and DENIES Defendants' motion as to Mr. Nitchman's alleged structural personal bias resulting alleged violation of Mr. Marable's Fourteenth Amendment due process rights.

**C.  Cause of Action Three--NIED Claim**

As noted above, Plaintiff Marable has provided no causal link between his alleged reaction to Oil Eater 99 and his alleged emotional distress. (<u>See</u> *supra* at 12-13). He also alleges that a rash broke out on his hands and feet due to the stress he suffered at work. (July 17 Marable Aff. at ¶ 12, ln. 5-6).  However, this rash is not documented or diagnosed by Dr. Hoitink, even though it is clear

that Mr. Marable was in contact with the doctor throughout the relevant time period.  Because he

cannot fulfill the legal elements of a Negligent Infliction of Emotional Distress Claim regarding either

his reaction to Oil Eater 99 or his alleged rash, even when all facts as presented are construed in his

favor, this claim is DISMISSED.  The Court hereby GRANTS summary judgment in Defendants'

favor as to Plaintiff's NIED Claim.

## D.  Cause of Action Four–Whistleblower Retaliation Claim

Plaintiff is bringing claims of whistleblower retaliation against Defendants under two separate

statutes–RCW §49.60 and RCW §42.40.050(1).  The first of these is the retaliation provision of the

Washington Law Against Discrimination ("WLAD").  The WLAD generally prohibits activities in the

workplace that discriminate on the basis of race, sex, national origin, religion, sexual orientation,

physical disability, HIV status, or age.  See generally RCW §§ 49.60.030, 49.060.172, and 49.44.090.

The whistleblower provision of the WLAD provides, in pertinent part,

> (1) It is an unfair practice for any employer, employment agency, labor union, or other
> person to discharge, expel, or otherwise discriminate against any person because he or
> she has opposed any practices forbidden by this chapter, or because he or she has filed
> a charge, testified, or assisted in any proceeding under this chapter.
> (2) It is an unfair practice for a government agency or government manager or
> supervisor to retaliate against a whistleblower as defined in chapter 42.40 RCW.

RCW § 49.60.210. Plaintiff Marable has made no allegation that any of the behavior that he

experienced stems from discriminatory behavior prohibited by the WLAD.  His claims must, therefore

be established under RCW §42.40.050, which provides a cause of action for individuals deemed to be

"whistleblowers" as defined by RCW § 42.40.020. The section of  RCW §42.40.020 that is pertinent

to this litigation provides:

> (8) "Whistleblower" means an employee who in good faith reports alleged improper
> governmental action to the auditor, initiating an investigation under RCW 42.40.040.
> For purposes of the provisions of this chapter and chapter 49.60 RCW relating to
> reprisals and retaliatory action, the term "whistleblower" also means: (a) An employee

who in good faith provides information to the auditor in connection with an investigation under RCW 42.40.040 and an employee who is believed to have reported asserted improper governmental action to the auditor or to have provided information to the auditor in connection with an investigation under RCW 42.40.040 but who, in fact, has not reported such action or provided such information; or (b) an employee who in good faith identifies rules warranting review or provides information to the rules review committee, and an employee who is believed to have identified rules warranting review or provided information to the rules review committee but who, in fact, has not done so.

RCW §42.40.020(8).  Defendants concentrate on the fact that "auditor" in this section is defined as "the office of the state auditor." RCW § 42.40.020(1). Mr. Marable argues that he was either thought by management to be in communication with the state auditor or to have identified rules warranting review, under sub-sections (a) and (b) of this statute.  Although Mr. Marable has not spoken with individuals from the state auditor's office in connection with this litigation, he does assert that he spoke with a woman named Jeri Silvertson from the Department of Transportation auditor's office regarding his concerns over pay padding in 2002.  He also testified that he filed an ethics charge regarding the allegations at issue in this litigation with the Washington State Executive Ethics Board. (See Marable's April 21 Aff. at ¶5; Marable Dep. at 95, lns. 3-5).  The entire record of this case on both sides demonstrates that, at the very least, Mr. Marable was an extremely vocal employee who felt empowered to seek answers to his problems at the highest levels of authority within the WSF. (See e.g. Marable's April 21 Aff., Ex. I).  The facts that he did communicate with a DOT auditor and also filed an ethics charge around the time period in question only strengthen this inference.

To make out a prima facie claim of retaliation based on the exercise of first Amendment rights, Mr. Marable must demonstrate that: (1) his speech dealt with a matter of public concern; (2) his free speech interest is greater than WSF's interest in promoting the efficiency of the public services provided; (3) his speech was a substantial or motivating factor in the personnel decision adverse to the employee; and (4) in the absence of the protected speech, Mr. Nitchman would not

have made the same personnel decision.  <u>Dewey v. Tacoma School Dist. No. 10</u>, 95 Wn. App. 18, 24

(1999).  While this test is addressed more specifically in the Order addressing Defendant's Motion on

Plaintiff's First Amendment claims, the Court thinks that Mr. Marable has made a sufficient showing

at this stage that there are issues of fact regarding his retaliation claim for trial.  The Court notes that

Mr. Marable has submitted some evidence that he was vocal about his concerns about corruption at

WSF to higher authorities, such as the State Ethics Board, CEO Thorne, and a DOT Auditor.  The

Court finds that these complaints addressed matters of public concern. Mr. Marable has also

demonstrated that his disciplinary action and the alleged exposure to Oil Eater 99 came at around the

same time frame as his alleged protected speech.  Neither party has adequately addressed, at this

point, whether WSF's interest in promoting efficiency should outweigh Mr. Marable's right of free

speech and the Court reserves a ruling on this issue for a later time.  Given this situation, the Court

finds that Mr. Marable has succeeded in making out a prima facie case for retaliation and,

accordingly, DENIES Defendants' motion for summary judgment on this claim.

**E.  Cause of Action Five–Breach of Contract**

    Mr. Marable claims that he is a beneficiary of the collective bargaining agreement ("CBA")

between his union, the Marine Engineers Beneficial Association ("MEBA"), and the WSF.  He alleges

that Defendant Nitchman has breached this contract by breaching the duty of good faith and fair

dealing.  However, Mr. Marable has not produced the CBA to show that either he has standing under

that agreement, or that Mr. Nitchman, as a supervisor, as a MEBA member, or as someone who

presided over a disciplinary proceeding, had the ability to breach that agreement.  In his pleadings and

his Response to Defendants' motion, Plaintiff cites to no language in the CBA that was specifically

breached by Defendant Nitchman. The cases Plaintiff cites in his Response are not on point and deal

with contract validity when a state agency has exceeded its authority in making a contract. <u>See</u> <u>e.g.</u>

<u>Failor's Pharmacy v. DSHS</u>, 125 Wn. 2d 488, 498 (1994). In light of the lack of concrete allegations

regarding the contract cause of action, the Court has no choice but to DISMISS this cause of action

for failure to state a claim upon which relief may be granted.

CONCLUSION

The Court DENIES Plaintiff's Motion for summary judgment as to liability on three of his

claims.  The Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's structural

due process claim based on institutional bias, negligent infliction of emotional distress, and breach of

contract claims.  The Court DENIES summary judgment as to Plaintiff's structural due process claim

on personal bias and his whistle blower retaliation claim.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 5th day of September, 2006.

Marsha J. Pechman
United States District Judge