UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEN MARABLE,

                Plaintiff,

v.

MARK NITCHMAN,
RICHARD D. PHILLIPS, and
DOUGLAS MACDONALD

                Defendants.

No. C05-01270MJP

ORDER DENYING
DEFENDANTS' MOTION
FOR PARTIAL SUMMARY
JUDGMENT AND DISMISSAL OF
COUNT ONE-FIRST AMENDMENT
CLAIM

This matter comes before the Court on Defendants Mr. Nitchman's, Mr. Phillips', and Mr. MacDonald's Motion for Partial Summary Judgment and Dismissal of the Count One, First Amendment Claim. (Dkt. No. 40). The Court has reviewed Defendants' motion, Plaintiff Marable's opposition, Defendants' reply, as well as all exhibits and declarations submitted in support of the parties' positions. Having considered the matter before it, the Court hereby DENIES the motion for summary judgment because issues of material fact exist.

**Background**

Plaintiff Ken Marable has worked as an engineer for the Washington State Ferries ("WSF") for approximately thirty-two years. Defendant Doug Phillips is the Staff Chief Engineer on the MV PUYALLUP vessel and was Mr. Marable's direct supervisor. Defendant Mark Nitchman is Mr. Phillips' superior, and the former WSF Maintenance Director. Douglas MacDonald, the third Defendant in this case is the WSF Chief Executive Officer. The first two Defendants are being sued in their official and personal capacities. Mr. MacDonald is being sued in his official capacity only.

ORDER - 1

In 2005, Mr. Marable filed suit against the three Defendants pursuant to 42 U.S.C. §1983, the First and Fourteenth Amendments. Mr. Marable alleges that he was harassed and unlawfully suspended from work as a retaliatory action following his criticisms of "Special Projects" and other managerial decisions. Special Projects are those in which supervisors are given general authorizations to bill overtime, regular time, travel time and mileage to certain projects that arise outside the scope of regular duties. Mr. Marable claims that he complained to former WSF CEO Mike Thorne (See Marable's April 21 Aff., Ex. I), Washington State Department of Transportation auditor, Jeri Silvertson, and to the State Executive Ethics Board (See Marable's April 21 Aff. at ¶ 5; Marable Dep. at 95, lns. 3-5), as well as to Mr. Nitchman himself (See Nitchman Aff., Ex. 2, Marable's Dep. at 30-34). The disagreement turns on Mr. Marable's failure to follow orders given by his immediate supervisor, Mr. Phillips. Mr. Marable claims the "orders" were actually money making schemes, and that he was concerned that public money was being wasted on projects that did not need to be done, projects that were being wastefully continued for years, projects for which money was not properly accounted for, and/or projects that were being funded for which little or no work was actually being performed. Mr. Marable also alleges that he was purposely exposed to a chemical degreaser, Oil Eater 99, to which the Defendants knew or had reason to know he had suffered an allergic reaction. Defendants deny the charges and contend that Mr. Marable was suspended because of insubordinate acts, for which the WSF Code of Conduct allows disciplinary action consistent with that which was taken.

Mr. Marable is seeking compensatory and punitive damages for harm to his reputation, humiliation, and emotional distress from the two week suspension, and exposure to Oil Eater. Mr. Marable is also requesting attorney's fees, and a permanent injunction prohibiting future First Amendment violations. These claims have been addressed in the Court's two companion orders on the matter. (See Dkt. Nos. 64 & 70 ). Defendants' instant motion to partially dismiss pertains to the first of Mr. Marable's five counts, alleging First Amendment violations.

ORDER - 2

# Analysis

## A. Standard of Review

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

## B. Evidentiary Rulings

First, the Defendants object to evidence relating to Oil Eater 99 raised in Mr. Marable's second affidavit filed with the Court on July 17, 2006. Specifically, Defendants object to Paragraphs 3, 4, 11, 12, 13, 14, and 15. Paragraphs 4, 13, and 15 are addressed in this Court's previous order and will not be reexamined here.

- Paragraph 3 seeks to authenticate Exhibit A, which is a letter Mr. Marable wrote himself. This document is admitted because Mr. Marable can testify as to its authenticity and will be subject to cross-examination at trial.

ORDER - 3

- Paragraph 11 seeks to authenticate Exhibit F, which is a memo written by Mr. Phillips. The Court views this letter as an admission by a party-opponent under FRE 801(d)(2). The Court will not strike this paragraph.

- Paragraph 12 seeks to authenticate Exhibit G, which is an engine room log. This document is admitted as a business record under FRE 803(8). To the extent that this paragraph describes the events as Mr. Marable saw them, they are admitted as lay opinion testimony under FRE 701.

- Paragraph 14 seeks to authenticate Exhibit I, which is a letter Mr. Marable wrote himself. Mr. Marable can testify as to the authenticity of this letter and will be subject to cross-examination at trial.

Second, the Defendants object to the affidavits of Mr. Marable's co-workers which have been filed on his behalf. The Defendants claim that they are "immaterial, lack foundation, and are unproven." Defendants also object to admittance of Mr. Musselman and Mr. Newmon's affidavits as violations of res judicata. Excluding any hearsay contained in these affidavits, they are admitted as evidence showing a pattern of retaliatory conduct. The parties are asked to review the Courts earlier Order Denying Plaintiff's Motion for Summary Judgment and Granting In Part and Denying In Part Defendants' Motion for Summary Judgment on Plaintiff's Claims Against Nitchman and Phillips to the extent that each of these affidavits is otherwise admissible.

Third, the Defendants object to exhibits A-L attached to Mr. Musselman's affidavit. The Court has previously ruled on these objections in its previous order. Exhibits A through I have been struck. Exhibits J, K and L will be admitted because they are evidence from previous litigation in which he was involved and allowable under FRE 804(b)(1).

Fourth, the Defendants object to admission of the sections of Mr. Marable's July 17, 2006 affidavit and Dr. Hoitink's affidavit that relate to Mr. Marable's allergic reaction or his emotional distress because they are speculative. Specifically, Defendants ask the Court to strike Paragraphs 3, 12, 17 and 18 in Mr. Marable's affidavit.

- As for Dr. Hoitink's declaration, the information presented in his affidavit stems from either his knowledge as a physician or observations that he made while examining Mr. Marable. Any alleged hearsay contained in his statement comes from medical records, which Dr. Hoitink attached to his affidavit that meet the business records exception to the hearsay rule under FRE 803(6). Furthermore, Defendants have not provided any precise citations for the material to be struck from Dr. Hoitink's affidavit. Courts need not sift through evidence for alleged inadmissible statements without the aid of pinpoint cites. See Orr v. Bank of America, 285 F. 3d 764, 775 (9th Cir. 2002). In the future if Defendants would like statements struck, they must provide the line and page number of the offending statements.
- Paragraphs 3, 12, 17, and 18 in Mr. Marable's July 17 affidavit are admitted as layperson testimony under FRE 701.

Lastly, the Defendants ask the Court to strike the following portions of Mr. Marable's July 17, 2006 affidavit: Paragraph 12, ln. 4; Paragraph 16; Paragraph 20, Exhibit N; Paragraph 23; and Paragraph 27. Paragraphs 20 and 23 are addressed in the Court's previous order and will not be reexamined here.

- Paragraph 12, ln. 4: Mr. Marable states that he had to see Dr. Hoitink as a result of the emotional distress and stress caused by the "harassment" by Nitchman and Phillips. Defendants claim this is a legal conclusion. However, the statement is admitted as lay opinion testimony under FRE 701; it is based upon Mr. Marable's own experiences and helpful to understanding his claims.
- Paragraph 16, lns. 25-2: Mr. Marable states, "I believe Doug Phillips was not logging in events so that watchstanders on the Puyallup would have to call Doug Phillips and ask him questions and so that Doug Phillips would run up large amounts of overtime." This paragraph will not be stricken. It contains statements pertaining to Mr. Marable's experiences derived from his own personal knowledge. Any opinions he gives are

ORDER - 5

        admissible lay opinion testimony under FRE 701 that will allow the Court to further understand his claims.

- Exhibit N is a copy of a clipping from the Seattle Post-Intelligencer. The article is not relevant to the instant case and is striken.

- Paragraph 27, lns. 22-24: Mr. Marable's statement referring to state auditor Jeri Silvertson that: "...she stated it was her intention to confront Nitchman and Phillips regarding my allegations and stated the padding appeared to violate state law," is hearsay and is stricken.

**C. Procedural Issues**

      Mr. Marable claims that Defendants' motion for summary judgment should not be considered because of several procedural problems. First, Mr. Marable cites Local CR 7(d)(2)(A), [the correct citation is CR 7(e)(3)] which limits the page number for summary judgment motions to 24. Mr. Marable wrongly contends that all motions for summary judgment in a given case should be limited to 24 pages, and objects to Defendants' filing of two separate motions, which together exceed the page limit. However, the rule does not support Mr. Marable's presumption in this regard. Each of the Defendants' individual motions are within the page limit and are valid.

      Second, Mr. Marable claims that Fed. R. Civ. P. 56(g) allows a Court to strike affidavits made in bad faith. However, Rule 56(g) only discusses the possible imposition of reasonable expenses and does not permit the Court to strike affidavits. In any event, Mr. Phillips affidavit and the attached exhibits do not appear to contradict his early statement that he did not have documents related to Plaintiff. The exhibits contain corporate training manuals, codes of conduct and other general corporate information, none of which directly relate to Mr. Marable.

      Third, Mr. Marable inaccurately characterizes Fed. R. Civ. P. 56(f) when he states that it "provides a process for litigants to request additional information when an opposing party produces bad faith claim." Mr. Marable misquoted the case he cited, which actually reads, "Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not

ORDER - 6

had sufficient time to develop affirmative evidence." <u>Burlington Northern & Santa Fe Ry. Co. V. The Assiniboine</u>, 323 F.3d 767, 773 (9th Cir. 2003). Rule 56(f) is a method for extending the time for discovery before a summary judgment is considered, it does not relate to bad faith affidavits.

Finally, Mr. Marable claims that the Defendants motion for summary judgment should be dismissed because he is filing a cross motion for summary judgment and no issues of material fact exist to contest his motion. The Court, however, has considered Mr. Marable's motion for summary judgment separately and will not address that request here.

**D. First Amendment Protection**

The First Amendment protects public employees who suffer adverse employment decisions based on their speech if the Plaintiff is able to demonstrate that:

> (1) the speech deals with a matter of public concern; (2) the employee's free speech interest is greater than the employer's interest in promoting the efficiency of the public services provided; (3) the speech was a substantial or motivating factor in the personnel decision adverse to the employee; and (4) in the absence of the protected speech, the employer would not have made the same personnel decision.

<u>Dewey v. Tacoma School Dist. No. 10</u>, 95 Wn. App. 18, 24 (1999). The primary question of law for summary judgment purposes is whether Mr. Marable's speech constitutes a matter of public concern. <u>Connick v. Meyers</u>, 461 U.S. 138, 148 n.7 (1983) ("The inquiry into the protected status of speech is one of law, not fact."). The balancing test described in factor two is also a matter of law, but it is unclear from the summary judgment briefs whether the balance favors one party over the other. <u>See</u> <u>Pickering v. Board of Education</u>, 391 U.S. 563, 568 (1968); <u>See also</u> <u>White v. State</u>, 131 Wn 2d 1, 14 (1997). Both parties try to tip the balance in their favor by justifying their acts as necessary for the public's safety. Although ample case law encourages the Court to engage in a "delicate balancing of the competing interests" there is not any indication or guidance how to specifically carry out the test. In any case, for the purposes of the summary judgment motion, the Court will make all factual inferences in favor of the non-moving party, and presume the balance favors Mr. Marable until the Defendants are able to prove otherwise. The third and fourth factors addressing whether the decision to suspend Mr. Marable was in retaliation for his speech or for his

ORDER - 7

insubordinate acts, are matters of fact. Therefore, since Mr. Marable's speech meets the public concern requirement, and presents debatable material issues of fact as to the other three elements, summary judgment is denied.

**1. The Public Concern Requirement: A Matter of Law**

The public concern requirement attempts to differentiate between an employee's concern for the public as a private citizen and an employee's concern as it relates to matters of personal interest. See Pickering, 391 U.S. at 568. "Public concern is something that is the subject of legitimate news interest, that is a subject of general interest and of value and concern to the public..." Rankin v. McPherson, 483 U.S. 378, 386 (1987). Whether an employee's speech addresses a matter of public concern is determined by "the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147- 48.

Mr. Marble meets the public concern requirement because the content of his speech referred to issues of public resources and safety. Mr. Marable was concerned that public money was being wasted on the Special Projects program, and that internal corruption was inhibiting the efficiency and safety of the ferries, particularly in relation to logging information. In his deposition, Mr. Marable claims that he complained directly to Mr. Nitchman about the Special Projects and Mr. Phillips' assignments off the boat. ( Nitchman Aff. Ex. 2, Marable's Dep. at 30-34). Mr. Marable also claims he complained about Special Projects to higher authorities such as former WSF CEO Mr. Thorne, Department of Transportation auditor Jeri Silvertson, and the State Executive Ethics Board. Additionally, Mr. Marable purportedly voiced his opinion to Marty Micomonoco-his union representative, and to Mr. Nitchman's predecessor Ben Davis. (Nitchman Aff. Ex. 2, Marable's Dep. at 37-40, 61-62). Mr. Marable presents case law demonstrating that misuse of public funds, wastefulness and inefficiency have been found to be matters of public concern. See Roth v. Veteran's Admin., 856 F.2d 1401, 1405 (9th Cir. 1988). See also Johnson v. Multnomah County, 48 F.3d 420 (9th Cir. 1995). In order to meet the requirements of First Amendment retaliation, Mr. Marable's complaints must also be those of a private citizen and not pursuant to his official duties. See Garcetti

ORDER - 8

v. Ceballos, 126 S.Ct. 1951, 1960 (2005). The defense cites this recent Supreme Court decision in which a prosecutor was not protected by the First Amendment when he was allegedly retaliated against for circulating a critical interoffice memorandum. The Court held that writing office memorandums was part of the official duties of a prosecutor, and therefore not the act of a private citizen. Id. Mr. Marable's case is distinguishable because his complaints of misconduct were not assigned duties of WSF engineers. This case is more factually analogous to a different Supreme Court case which held that a teacher who wrote an article criticizing the school district's athletic funding policy was protected by the First Amendment, because writing an article to a newspaper is not part of a teacher's official duties. Pickering, 391 U.S. at 572.

**2. A Matter of Fact**

Not only must the speech be of a type that is protected, Mr. Marable must also be able to demonstrate that the speech was a motivating factor in Mr. Nitchman's decision to suspend him. Dewey, 95 Wn. App. at 24. Courts consider whether the Defendant would have made the same adverse employment decision regardless of Plaintiff's alleged speech. Id. The Supreme Court has held that it is the Defendants' burden to prove by clear and convincing evidence that their decision to suspend Mr. Marable was not affected by knowledge of his critical speech. See Reavis v. United States, 924 F.2d 948, 954 (9th Cir. 1991).

This element raises very fact-specific issues. Mr. Marable claims that the Defendants used the disciplinary action as a scare tactic to dissuade him from bringing attention to their "pay padding" scheme. Mr. Marable points to several other witnesses who contend similar retaliatory actions were taken against them for their criticisms of the special projects. Mr. Marable also claims there was a state auditor's review of Defendant Mr. Nitchman, based upon a whistleblower's complaint of improper government action (Compl. Ex. A), as well as a Department of Transportation audit following Mr. Marable's ethics claim. Although Mr. Nitchman maintains that auditor reviews were "fairly routine" procedures, the existence of such investigations close in time to the alleged retaliation supports Mr. Marable's allegations of misconduct. (Nitchman Aff. ¶ 59). Nonetheless, the

Defendants' affidavits indicate that they had no knowledge of Mr. Marable's objections to the Special Projects.(Nitchman Aff. ¶ 7-11, Phillips Aff. ¶ 12). By implication, without knowledge of the objections they could not have been a factor in Mr. Nitchman's decision to suspend him. The Defendants considered Mr. Marable a difficult employee, and claim to have suspended him for his insubordination. (Nitchman Aff. ¶ 86,89, Phillips Aff. ¶ 89). If the facts are taken in the light most favorable to Mr. Marable, however, there are material issues of fact that support Mr. Marable's retaliation argument. (See Marable's April 21 Aff., Ex. I; Marable's April 21 Aff. at ¶ 5; Marable Dep. at 95, lins. 3-5; Nitchman Aff., Ex. 2, Marable's Dep. at 30-34). Although the Defendants also present evidence to support their insubordination claim, the discrepancies are conflicts of fact rather than law. Until more evidence has been established which clearly nullifies Mr. Marable's claim, summary judgment is premature.

### 3. Qualified Immunity

Defendants Mr. Nitchman and Mr. Phillips claim qualified immunity for the action against them in their personal capacities. Case law supports Defendants' claim that public officials have immunity if the Plaintiff either has not demonstrated the existence of a constitutional right, or has not demonstrated that a reasonable official would have known that they had violated that right. "State officials cannot be held personally liable for damages in a section 1983 action unless their conduct violated 'clearly established' constitutional rights." White, 78 Wn. App. at 837. Section 1983 also permits qualified immunity to public officials who are sued for damages if they acted in good faith, regardless of whether the right has been established. See Harlow v. Fitzgerald, 457 U.S. 800 (1982).

Mr. Marable has demonstrated as a matter of law that he has a constitutional right to free speech. "The right of employees to comment on matters of public concern is a clearly established First Amendment right." Pickering, 391 U.S. at 568. The good faith question, however, is a subjective matter of fact. Harlow, 457 U.S. at 818 ("an official's subjective good faith has been considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury."). It is up to the factfinders to decide whether they believe the Defendants acted in reponse to Mr. Marable's

vocal criticisms or in reponse to his insubordinate acts. Therefore, the Court affirms the existence of a constitutional right, but reserves the question of violation for the factfinders.

## Conclusion

Mr. Marable meets the legal requirements for establishing a First Amendment claim because he presents sufficient evidence to raise material issues of fact as to his count one claim. Therefore, the Court hereby DENIES Defendants' motion for summary judgment.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 5th day of September, 2006.

Marsha J. Pechman
United States District Judge